1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Michael Apelt,                          )   No. CV-98-00882-PHX-ROS
                                            )
10              Petitioner,                  )   <u>DEATH PENALTY CASE</u>
                                            )
11  vs.                                      )
                                            )
12  Charles L. Ryan, et al.,                 )   **ORDER RE: MOTION TO AMEND**
                                            )   **AND PROCEDURAL STATUS OF**
13              Respondents.                 )   **SENTENCING CLAIMS**
                                            )
14                                           )
                                            )
15

16         Petitioner Michael Apelt ("Petitioner") filed a Second Amended Petition presenting

17  twenty-five claims alleging that he is imprisoned and sentenced to death in violation of the

18  United States Constitution.  (Doc. 63.)[1]  Petitioner now moves to amend his petition, lodging

19  a proposed Third Amended Petition adding two claims and additional facts to pending

20  claims.  (Doc. 248.)  In previous Orders, the Court determined the procedural status and

21  resolved claims related to Petitioner's conviction.  (Docs. 132, 180, 210.)  This Order

22  resolves Petitioner's motion to amend and addresses the procedural status of Petitioner's

23  remaining sentencing claims.

24                              **BACKGROUND**

25         In August 1988, Petitioner Michael Apelt and his brother Rudi Apelt, accompanied

26  by Rudi's wife, Susanne, and Petitioner's girlfriend, Anke Dorn, traveled from their native

27

28         [1]      "Doc." refers to the documents in this Court's file.

Germany to America.  *See State v. Michael Apelt*, 176 Ariz. 349, 353, 861 P.2d 634, 638 (1993). In California and then in Arizona the Apelts and Dorn embarked on a series of romantic and financial cons that culminated in Petitioner's marriage to, and the subsequent murder of, Cindy Monkman.  *Id.* at 353-56, 861 P.2d at 638-41.

Petitioner and Rudi were tried separately.  *Id.* at 356, 861 P.2d at 641.  Dorn was granted immunity and testified at both trials. *Id.* at 356-57, 861 P.2d at 641-42.  A jury found Petitioner guilty of first-degree murder and conspiracy to commit first-degree murder. (ROA 285, 286.)[2]  The court sentenced Petitioner to death on the murder conviction.  (ROA 321, 322.)

While his direct appeal was pending, Petitioner filed his first post-conviction relief ("PCR") petition pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.  The Arizona Supreme Court re-vested jurisdiction in the trial court to resolve the merits of the petition.  (SCT-DOC 9.)  The trial court summarily dismissed the petition, and Petitioner filed a petition for review in the Arizona Supreme Court.   (ROA-PCR1 207; SCT-DOC 10.) The Arizona Supreme Court consolidated direct appeal and PCR proceedings, affirmed the denial of post-conviction relief, and affirmed the convictions and sentence. *Apelt*, 176 Ariz. at 353, 369, 861 P.2d at 638, 654.

Petitioner filed a second PCR petition and amended it to include additional claims. (ROA-PCR2 Doc. 19, 22.) The trial court denied relief.  (ROA-PCR2 Doc. 42.)  After a change of counsel, Petitioner filed a petition for review, which was summarily denied. (SCT-

---

[2]        "ROA" refers to the five-volume record on appeal from trial and sentencing prepared for Petitioner's direct appeal to the Arizona Supreme Court  (Case No. CR-90-0246-AP).  "RT" refers to the reporter's transcripts of Petitioner's trial and sentencing proceedings.  "SCT-DOC" refers to the Arizona Supreme Court's docket numbers from Petitioner's direct appeal (Case No. CR 90-0246-AP) and his second PCR proceeding (Case No. CR 97-0523-PC.)  "ROA-PCR1" refers to the one-volume record on appeal from post-conviction proceedings prepared for Petitioner's petition for review to the Arizona Supreme Court (Case No. CR-90-0246-AP/PC).  "ROA-PCR2" refers to the three-volume record on appeal from post-conviction proceedings prepared for Petitioner's petition for review to the Arizona Supreme Court (Case No. CR-97-0523-PC). A certified copy of the state court record was provided to this Court by the Arizona Supreme Court on August 10, 1998. (*See* Doc. 22.)

1  DOC 3.)

2      Petitioner initiated proceedings in this Court by filing an initial habeas petition and

3  an amended petition.  (Doc. 1, 63.)  Petitioner moved and this Court stayed his sentencing-

4  related claims due to intervening U.S. Supreme Court decisions in *Ring v. Arizona*, 536 U.S.

5  584 (2002) (holding that a jury must determine the existence of facts rendering a defendant

6  eligible for capital punishment), and *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that

7  the Eighth Amendment prohibits a state from sentencing to death or executing a mentally

8  retarded person). (Doc. 117.)  While Petitioner pursued a third PCR petition in state court

9  seeking relief from his death sentence based on these new cases, the Court addressed

10  Petitioner's conviction-related claims and dismissed with prejudice Claims 1-A, 1-B, 2-10,

11  13, and 20.  (Docs. 132, 180, 210.)  Ultimately, the state court determined that Petitioner was

12  not entitled to sentencing relief.  Following the conclusion of state court proceedings, the

13  Court vacated its stay of Petitioner's sentencing-related claims, and Petitioner filed the

14  instant motion to amend.  (Doc. 239.)

15                                    **MOTION TO AMEND**

16      Petitioner's proposed Third Amended Petition seeks to add two claims, both of which

17  are related to his *Atkins* litigation. (Doc. 248.)  Proposed Claim 26 alleges that pursuant to

18  *Atkins* Petitioner cannot be executed because he is mentally retarded.  Proposed Claim 27

19  alleges that Petitioner's rights to due process, equal protection, a jury trial, and to be free of

20  cruel and unusual punishment were violated by the state court's use of a clear and convincing

21  standard of proof for claims of mental retardation.  Petitioner's proposed Third Amended

22  Petition also seeks to amend his factual background section, his procedural history section,

23  and additional facts to Claims 1, 11-13, 16, and 19-20.

24      Respondents contend that amendment to add Claims 26 and 27 is unwarranted

25  because the claims are meritless and therefore futile.  (Doc. 264 at 6-18.)  Based on denial

26  to Claims 26 and 27, Respondents further contend that amendment to the factual background

27  and procedural history sections be denied.  Finally, Respondents argue that amendment to

28  add new facts to existing claims should be denied as futile because these claims are either

procedurally defaulted or barred, or because the new facts were not timely raised.  (*Id.*)

**Standard for Amendment**

A petition for habeas corpus may be amended pursuant to the Federal Rules of Civil Procedure.  28 U.S.C. § 2242; *see also* Rule 12, Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (providing that the Federal Rules of Civil Procedure may be applied to habeas petitions to the extent they are not inconsistent with the habeas rules).  Thus, the Court looks to Rule 15 of the Federal Rules of Civil Procedure to address a party's motion to amend a pleading in a habeas corpus action.  *See James v. Pliler*, 269 F.3d 1124, 1126 (9th Cir. 2001).  Leave to amend shall be freely given "when justice so requires," Fed. R. Civ. P. 15(a), and courts must review motions to amend in light of the strong policy permitting amendment. *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986).  The factors which may justify denying a motion to amend are undue delay, bad faith or dilatory motive, futility of amendment, undue prejudice to the opposing party, and whether petitioner has previously amended.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Leave to amend may be denied based upon futility alone.  *See Bonin*, 59 F.3d at 845. To assess futility, a court necessarily evaluates whether relief may be available on the merits of the proposed claim.  *See Caswell v. Calderon*, 363 F.3d 832, 837-39 (9th Cir. 2004) (conducting a two-part futility analysis reviewing both exhaustion of state court remedies and the merits of the proposed claim).  If proposed claims are untimely, unexhausted, or otherwise fail as a matter of law, amendment should be denied as futile.

**Analysis**

*Proposed Claim 26*

Petitioner's proposed habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Respondents contend that the *Atkins* claim is tenuous and futile because Petitioner cannot demonstrate that the state court decision was contrary to, or an unreasonable application of *Atkins*, in violation of 28 U.S.C. § 2254(d)(1). (Doc. 264 at 7-8.)  In support, Respondents discuss at length how the state court reasonably

1 arrived at its decision to reject Petitioner's *Atkins* claim after an extensive evidentiary
2 hearing.  (*Id.* at 8-17.)

3      The merit or lack of merit of a claim does not determine whether it is tenuous.  *See*
4 *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)
5 (discussing the tenuousness of a legal claim and denying amendment in a context where no
6 appellate court had ever recognized the legal cause of action at issue).  Where the legal basis
7 for a cause of action is tenuous, futility supports the refusal to grant leave to amend.  *See*
8 *Caswell*, 363 F.3d at 837; *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 614 (9th Cir.
9 1993) (proposed claim was not colorable and therefore district court properly denied leave
10 to amend).  Petitioner's *Atkins* claim does not fit the definition of a tenuous legal claim;
11 rather, the state court conducted an extensive evidentiary hearing to determine whether
12 Petitioner was mentally retarded and rendered an extensive opinion concluding that Petitioner
13 was not entitled to sentencing relief.  Even though the court concluded that the claim lacked
14 merit, it was not a tenuous claim and is thus not futile in the context of a request for leave to
15 amend.  The Court grants Petitioner's request to add Claim 26 to his petition.

16      *Proposed Claim 27*

17      In this claim, Petitioner argues that the state violated his constitutional rights by
18 requiring him to prove mental retardation by clear and convincing evidence.  (Doc. 248, Att.
19 1 at 141-42.)  According to Petitioner, Arizona's evidentiary standard for mental retardation
20 violated his rights under *Atkins* and *Cooper v. Oklahoma*, 517 U.S. 348 (1996) (holding that
21 defendant cannot be required to demonstrate competence to stand trial by clear and
22 convincing evidence; the proper legal standard is a preponderance of the evidence).  (*Id.*)

23      Respondents argue that this claim is also futile because under *Atkins*, the Supreme
24 Court has never forbidden a state from requiring petitioners to prove mental retardation by
25 clear and convincing evidence.  Respondents cite *Carey v. Musladin*, 549 U.S. 70, 77 (2006)
26 and *Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007), for the proposition that if the
27 Supreme Court has not addressed the specific issue in a holding, then the state court cannot
28 be found to have ruled contrary to, or to have unreasonably applied, clearly established

1   federal law on that issue.  (*See id.*)

2       Petitioner argues that Arizona is violating *Atkins* because if a prisoner is only able to

3   demonstrate mental retardation by a preponderance of the evidence, they are still subject to

4   execution even though *Atkins* constitutionally prohibits the mentally retarded from being

5   executed.  (Doc. 248, Att. 1 at 141-42.)

6       In *Atkins*, the Supreme Court specifically declined to specify the procedures that states

7   should use to identify mentally retarded individuals, deferring to the states to develop

8   appropriate procedures.  *See Atkins*, 536 U.S. at 317.  On the other hand, the Court did not

9   give states unfettered discretion to enact procedures which may allow for the execution of

10  the mentally retarded.  *Id.*  Rather, states were entrusted with the responsibility to develop

11  procedural safeguards that would enforce the constitutional restriction upon execution of the

12  mentally retarded.  *Id.*

13      In reaching a decision on Petitioner's motion to amend, the Court need not decide the

14  merits of this issue.  Relying on the constitutional application of *Atkins*, Petitioner has

15  demonstrated to the Court that this claim is not necessarily futile.  Therefore, the Court grants

16  amendment and it may be briefed on its merit.

17      *Proposed Additional Facts*

18      In his proposed Third Amended Petition, Petitioner amends both the factual

19  background and procedural history sections of his Second Amended Petition to detail new

20  evidence adduced during his *Atkins*-related third PCR proceeding in state court.  (Doc. 248,

21  Att. 1 at 2, 5, 18-24.)  Because the Court is granting amendment to add Claims 26 and 27,

22  the Court grants Petitioner's requests to amend the factual background and procedural history

23  sections.

24      Petitioner also seeks to amend Claims 1-C, 1-D, 11-13, 16, and 19-20 to add new facts

25  developed during his third state PCR proceeding.  Respondents assert that Petitioner's new

26  facts could and should have been developed prior to his third PCR proceeding and, therefore,

27  amendment is inappropriate.  The issue of whether Petitioner diligently developed the factual

28  basis of his claims and whether the Court may consider any newly-proffered evidence will

- 6 -

be addressed if and when the Court undertakes merits analysis of Petitioner's remaining claims.  As discussed below, the Court determines that some of these claims are either procedurally barred or are plainly meritless.[3]  For the remainder, the parties will be filing supplemental briefs, and Respondents may reassert their diligence arguments therein.  At this stage, however, Petitioner seeks only leave to amend his allegations.  Because the Court can discern no prejudice to Respondents by allowing Petitioner to add the additional factual allegations to his existing claims, the motion is granted.

**PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT**

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies.  28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  To exhaust state remedies, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).  If a habeas claim includes new factual allegations not presented to the state court, it may be considered unexhausted if the new facts "fundamentally alter" the legal claim presented and considered in state court.  *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

Exhaustion requires that a petitioner clearly alert the state court that he is alleging a specific federal constitutional violation.  *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004); *see also Gray v. Netherland*, 518 U.S. 152, 163 (1996) (general appeal to due process not sufficient to present substance of federal claim); *Lyons v. Crawford*, 232 F.3d 666, 669-70 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to insufficiency of evidence, right to be tried by impartial jury, and ineffective assistance of counsel lacked specificity and explicitness required); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish

---

[3]   In addition, the Court previously dismissed Claim 13 as procedurally barred and Claim 20 as not a cognizable claim for habeas relief.  (*See* Doc. 132 at 35-36.)

1    exhaustion.").  A petitioner must make the federal basis of a claim explicit either by citing

2    specific provisions of federal law or case law, *Lyons*, 232 F.3d at 670, or by citing state cases

3    that plainly analyze the federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153,

4    1158 (9th Cir. 2003) (en banc).

5        In Arizona, there are two primary procedurally appropriate avenues for petitioners to

6    exhaust federal constitutional claims: direct appeal and PCR proceedings.  Rule 32 of the

7    Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner

8    is precluded from relief on any claim that could have been raised on appeal or in a prior PCR

9    petition.  Ariz. R. Crim. P. 32.2(a)(3).  The preclusive effect of Rule 32.2(a) may be avoided

10   only if a claim falls within certain exceptions (subsections (d) through (h) of Rule 32.1) and

11   the petitioner can justify why the claim was omitted from a prior petition or not presented in

12   a timely manner.  *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(b), 32.4(a).

13       A habeas petitioner's claims may be precluded from federal review in two ways.

14   First, a claim may be procedurally defaulted in federal court if it was actually raised in state

15   court but found by that court to be defaulted on state procedural grounds.  *Coleman*, 501 U.S.

16   at 729-30.  The procedural bar relied on by the state court must be independent of federal law

17   and adequate to warrant preclusion of federal review.  *See Harris v. Reed*, 489 U.S. 255, 262

18   (1989).  A state ruling of procedural default is not independent if, for example, it depends

19   upon a federal constitutional ruling.  *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per

20   curiam).  A state procedural bar is not adequate unless it was firmly established and regularly

21   followed at the time of the purported default.  *See Ford v. Georgia*, 498 U.S. 411, 423-24

22   (1991).

23       Second, a claim may be procedurally defaulted if the petitioner failed to present it in

24   state court and "the court to which the petitioner would be required to present his claims in

25   order to meet the exhaustion requirement would now find the claims procedurally barred."

26   *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998)

27   (stating that the district court must consider whether the claim could be pursued by any

28   presently available state remedy).  If no remedies are currently available pursuant to Rule 32,

1   the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732,

2   735 n.1; *see also Gray*, 518 U.S. at 161-62; *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th

3   Cir. 2010) (equating technical exhaustion with implied procedural bar).

4           Because the doctrine of procedural default is based on comity, not jurisdiction, federal

5   courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*,

6   468 U.S. 1, 9 (1984).  As a general matter, this Court will not review the merits of a

7   procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure

8   to properly exhaust the claim in state court and prejudice from the alleged constitutional

9   violation, or shows that a fundamental miscarriage of justice would result if the claim were

10  not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

11  ## PROCEDURAL STATUS OF CLAIMS

12          In a prior Order, the Court determined the procedural status of Claims 1-A, 1-B, 2-10,

13  13, and 20, all of which relate to Petitioner's conviction. (Doc. 132.)  Following briefing on

14  the merits of the non-defaulted conviction-related claims, the Court determined that

15  Petitioner was entitled to neither an evidentiary hearing nor habeas relief on any of these

16  claims. (Docs. 180, 210.)

17          The Court now addresses the procedural status of Claims 1-C, 1-D, 11-12, 14-19, and

18  21-25.  Respondents contend each is procedurally barred from merits review either in whole

19  or in part.  (Doc. 48.)

20  **Claim 1-C**

21          Petitioner alleges that the trial court erred by not *sua sponte* conducting a hearing to

22  determine his competency at sentencing in violation of the Fifth, Sixth, Eighth and

23  Fourteenth Amendments.[4]  (*See* Doc. 63 at 19.)  Petitioner asserts that he exhausted this

24

25          [4]      With respect to Petitioner's assertion in various claims that his due process

26  rights under the Fifth Amendment were violated, it is the Fourteenth Amendment, not the
    Fifth Amendment that protects a person against deprivations of due process by a state. *See*

27  U.S. Const. amend. XIV, § 1 ("nor shall any state deprive any person of life, liberty, or
    property without due process of law"); *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th

28  Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons

claim in his second PCR.  (Doc. 49 at 29.)  Respondents contend that Petitioner failed to fairly present this claim in state court and that it is procedurally defaulted.  (Doc. 48 at 47.)  The Court agrees.

In claim 13 of his second PCR petition Petitioner alleged that prior to and during trial, jail authorities medicated him in a manner that rendered him unable to competently aid in the preparation of his defense. (ROA-PCR2 at 35, 73.)  However, the factual basis he presented to the state court was that he was medicated during trial proceedings; he did not allege that he was medicated during sentencing proceedings.  (*Id.*)  Therefore, he did not fairly present the factual basis of Claim 1-C in his second PCR petition.  Furthermore, even if Petitioner had presented the factual basis of Claim 1-C, the trial court, citing Arizona Rule Criminal Procedure 32.2(a)(3), concluded that Petitioner had waived the claim because he failed to raise it either during trial, on appeal, or in his first PCR petition.  (*Id.* at 390.)  An independent and adequate state procedural rule, if invoked by the state court, bars federal court review of the underlying claim.  *Coleman*, 501 U.S. at 750.  The state court's waiver ruling is a procedural ruling that is regularly and consistently followed in Arizona. *See Poland (Michael) v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997); *see also Poland (Patrick) v. Stewart*, 169 F.3d 573, 585 (9th Cir. 1999).  Because this waiver rule is regularly and consistently followed in Arizona, it is adequate to bar federal review.  *Id.*  The state court's reliance upon Rule 32.2(a)(3) in its waiver ruling is also independent of federal law.  *See Stewart v. Smith*, 536 U.S. 856, 859-60 (2002).

Petitioner also argues that Claim 1-C was exhausted when the PCR court reached the merits of his claim of ineffective assistance of counsel ("IAC") on direct appeal.  (Doc. 49 at 30-31, citing ROA-PCR2 at 390.) Petitioner's IAC claim argued that direct appeal counsel should have presented every claim that Petitioner presented in his second PCR petition.  (ROA-PCR2 at 64.)  However, Claim 1-C was not presented in Petitioner's second PCR

---

of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.").  Accordingly, Petitioner's Fifth Amendment allegations are summarily dismissed.

1   petition; therefore, there is no argument that it was fairly presented by the appellate IAC

2   claim.  Moreover, a claim of appellate IAC would be insufficient to exhaust the legal theory

3   of Claim 1-C, which alleges error by the trial court, not appellate counsel.

4          When a petitioner fails to fairly present a claim, it is the role of the federal court to

5   determine if he has any available remaining remedies in state court.  *See Ortiz*, 149 F.3d at

6   931.  In making that decision, the court must assess the likelihood that a state court will allow

7   a determination on the merits of his claim in a subsequent proceeding.  *See Phillips v.*

8   *Woodford*, 267 F.3d 966, 974 (9th Cir. 2001).  The Court concludes that if Petitioner returned

9   to state court and attempted to litigate Claim 1-C, it would be found waived and untimely

10  under Rules 32.2(a)(3)[5] and 32.4(a) of the Arizona Rules of Criminal Procedure because it

11  does not fall within an exception to preclusion.  *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).

12  Therefore, Claim 1-C is "technically" exhausted but procedurally defaulted because

13  Petitioner no longer has an available state remedy.  *See Coleman*, 501 U.S. at 732, 735 n.1;

14  *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (en banc).

15  ─────────────────────

16         [5]     To the extent the Court concludes throughout this Order that Petitioner does
    not have an available remedy in state court, because claims or portions of claims would be
17  precluded as waived and untimely pursuant to Rules 32.2(a)(3) and 32.4(a), Petitioner does
    not assert that any exceptions to preclusion are applicable.  *See Beaty v. Stewart*, 303 F.3d
18  975, 987 &  n.5 (9th Cir. 2002) (finding no available state court remedies and noting that
    petitioner did not attempt to raise any exceptions to Rule 32.2(a)).  First, Petitioner does not
19  assert the application of any of the preclusion exceptions enumerated in Rule 32.2(b)(2), and
    the Court finds that none apply.  *See* Ariz. R. Crim. P. 32.2(b)(2); 32.1(d)-(h).  Second,
20  Petitioner does not argue that any of the claims are of the type that cannot be waived absent
    a personal knowing, voluntary, and intelligent waiver.  *See, e.g., Cassett v. Stewart*, 406 F.3d
21  614, 622-23 (9th Cir. 2005).
           The Court concludes, as to all of the claims in this Order for which the Court
22  determines there is no available remedy in state court, that none of those claims fall within
    the limited framework of claims requiring a knowing, voluntary, and intelligent waiver.  *See*
23  Ariz. R. Crim. P. 32.2(a)(3) cmt. (West 2004) (noting that most claims of trial error do not
    require a personal waiver); *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002)
24  (identifying the right to counsel, right to a jury trial, and right to a 12-person jury under the
    Arizona Constitution as the type of claims that require personal waiver); *see also State v.*
25  *Espinosa*, 200 Ariz. 503, 505, 29 P.3d 278, 280 (App. 2001) (withdrawal of plea offer in
26  violation of due process not a claim requiring personal waiver); *but cf. Cassett*, 406 F.3d at
    622-23 (finding claim not defaulted because unclear whether personal waiver would be
27  required under state law).
28

Finally, Petitioner argues that Claim 1-C was exhausted on direct appeal by the Arizona Supreme Court's review for fundamental error or by its independent sentencing review. The Ninth Circuit has rejected these arguments. In *Moormann v. Schriro*, 426 F.3d 1044, 1057-58 (9th Cir. 2005), the court reiterated:

> Where the parties did not mention an issue in their briefs and where the court did not mention it was considering that issue sua sponte, there is no evidence that the appellate court actually considered the issue, regardless of its duty to review for fundamental error, and the issue cannot be deemed exhausted.

*Id.* at 1057. The *Moormann* court further concluded that independent sentencing review has a limited scope and that most constitutional claims are not exhausted by this review. *Id.* Thus, Claim 1-C was not exhausted by the Arizona Supreme Court's fundamental error or independent sentencing review. Claim 1-C will not be considered on the merits absent a showing of cause and prejudice or that a fundamental miscarriage of justice ("FMJ") would occur if that claim was not reviewed on the merits.

The Court has already considered Petitioner's cause, prejudice, and FMJ arguments for this claim and determined that those grounds are insufficient to excuse the procedural default of the conviction-related aspects of this claim. (*See* Doc. 132 at 15-18.) That determination applies equally to Claim 1-C. Claim 1-C is dismissed as procedurally barred.

**Claim 1-D**

Petitioner alleges that he was denied his constitutional right to a fair sentencing proceeding by his counsel's failure to request that the sentencing court conduct a competency hearing. (*See* Doc. 63 at 19.) Petitioner asserts that he exhausted this claim in his second PCR. (Doc. 49 at 29.) Respondents contend that Petitioner failed to fairly present this claim in state court and it is defaulted. (Doc. 48 at 47.) The Court agrees.

In his second PCR, Petitioner alleged that trial counsel was ineffective because he failed to properly investigate and present available mitigation at his sentencing hearing. (ROA PCR2 at 40-49.) Included in the factual basis of this allegation, Petitioner asserted that counsel was aware that he had received prescription medications while in jail for mental and nervousness problems. (*Id.* at 44 n.2.) However, Petitioner never used those facts to

present the claim that counsel was deficient for failing to raise a claim that he was incompetent for sentencing. Furthermore, Petitioner's supplement to his second PCR petition, which presented additional allegations of trial counsel ineffectiveness, did not raise this claim. (ROA-PCR2 at 183, 195-96.) Although Petitioner mentioned trial counsel's lack of investigation of psychiatrists and their reports that were written while he was incarcerated at the Pinal County Jail and Maricopa County's Madison Street Jail, the context of his allegation was trial counsel's failure to investigate and obtain potential mitigation for sentencing, not to raise the claim that he was incompetent for sentencing. (*Id.* at 195.)

The Court concludes that if Petitioner were to return to state court now and attempt to present Claim 1-D, it would be found waived and untimely under Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4(a) because it does not fall within an exception to preclusion. *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, Claim 1-D is "technically" exhausted but procedurally defaulted because Petitioner no longer has an available state remedy. *See Coleman*, 501 U.S. at 732, 735 n.1; *Smith*, 510 F.3d at 1138.

In Claim 1-C, the Court considered and rejected Petitioner's additional arguments regarding exhaustion, cause and prejudice, and FMJ. (*See also* Doc. 132 at 19-25; Doc. 180 at 3-4 (rejecting counsel's conflict of interest claim as cause to excuse procedural default).) Claim 1-D is dismissed as procedurally barred.

**Claim 11**

Petitioner alleges that the sentencing court's denial of travel funds for counsel to go to Germany in search of mitigation for presentation at sentencing violated his rights under the Eighth and Fourteenth Amendments.[6] (Doc. 63 at 43.) Respondents concede these constitutional arguments were fairly presented and exhausted in state court. (Doc. 48 at 52.)

Petitioner also alleges that the state court's refusal to provide travel funds denied him

---

[6] Second counsel for Petitioner, Kelly Robertson, did travel to Germany on behalf of Petitioner prior to trial. (RT 11/27/89 at 10; 3/20/90 at 33; 6/11/90 at 7.) Even though travel costs were at her own expense, the trial court paid for her services to Petitioner. (*Id.*)

1  his right to counsel in violation of the Sixth Amendment.  (Doc. 63 at 45.)  Respondents

2  contest fair presentation of this argument.  (Doc. 48 at 52.)  Petitioner asserts that he

3  presented his Sixth Amendment argument on direct appeal. (Doc. 49 at 58-59.)  The Court

4  disagrees.  On direct appeal, although Petitioner cited effective assistance of counsel as a

5  legal proposition, it was cited in support of his Eighth and Fourteenth Amendment claim that

6  the trial court violated his constitutional right to a fair sentencing proceeding by not allowing

7  his counsel to travel to Germany to investigate and obtain mitigation for presentation at

8  sentencing.  (*See* Opening Br. at 42-43.)  Petitioner was not attempting to and did not assert

9  a violation of the Sixth Amendment.  (*See id.*)

10  If Petitioner were to return to state court now and attempt to argue that the trial court

11  violated the Sixth Amendment, it would be found waived and untimely under Arizona Rules

12  of Criminal Procedure 32.2(a)(3) and 32.4(a) because it does not fall within an exception to

13  preclusion.  *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Therefore, Petitioner's Sixth

14  Amendment argument is "technically" exhausted but procedurally defaulted because he no

15  longer has an available state remedy.  *See Coleman*, 501 U.S. at 732, 735 n.1; *Smith*, 510

16  F.3d at 1138.

17  As cause to excuse the default, Petitioner contends that direct appeal counsel was

18  deficient for failing to raise this aspect of his trial court error claim.  Before a claim of IAC

19  may be used as cause to excuse a procedural default, it must first be exhausted in state court

20  as an independent claim.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000); *Murray*

21  *v. Carrier*, 477 U.S. 478, 489-90 (1986); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th

22  Cir.1988).  Petitioner did not present this argument during PCR proceedings.  (*See*

23  ROA-PCR 19 at 35.)  Therefore, it is not exhausted and cannot establish cause.  Because

24  Petitioner has failed to establish cause, there is no need to address prejudice. *See Boyd v.*

25  *Thompson*, 147 F.3d 1124, 1127 (9th Cir.1998).  The Court has already considered and

26  rejected the FMJ argument made for this claim.  (Doc. 49 at 60; Doc. 132 at 18.)  The Eighth

27  and Fourteenth Amendment aspects of Claim 11 will be reviewed on the merits; the Sixth

28  Amendment aspect is procedurally barred.

1    **Claim 12**

2        Petitioner alleges that counsel performed deficiently by not properly investigating and

3    presenting mitigation at sentencing. (Doc. 63 at 46-48.)  Specifically, counsel should have

4    provided the trial court with the verification it requested regarding the necessity for counsel

5    to travel to Germany in order to properly investigate and obtain relevant mitigation.  (*Id.*)

6    Petitioner presented this claim in his second PCR.  (ROA-PCR2 at 40-49.)  The PCR court

7    concluded that the IAC claim was waived pursuant to Arizona Rule of Criminal Procedure

8    32.2(a)(3) because Petitioner did not present it in a prior proceeding.  (*Id.* at 390.)

9        An independent and adequate state procedural rule, if invoked by the state court, bars

10   federal court review of the underlying claim.  *Coleman*, 501 U.S. at 750.  A state procedural

11   rule constitutes an adequate bar to federal habeas review if it was "firmly established and

12   regularly followed" at the time of the purported default.  *Poland (Patrick),* 169 F.3d at 585

13   (quoting *Ford v. Georgia,* 498 U.S. 411, 424 (1991)); *see King v. Lamarque*, 464 F.3d 963,

14   965 (9th Cir. 2006); *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003).  To be firmly

15   established or consistently applied, a rule must be clear and certain.  *See Morales v.*

16   *Calderon*, 85 F.3d 1387, 1390-92 (9th Cir.1996)); *Wells v. Maass*, 28 F.3d 1005, 1010

17   (1994).  The consistent and regular application requirement is satisfied if the procedural rule

18   is applied in the vast majority of cases.  *See Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989)

19   (stating that a few cases ignoring the procedural default will not undercut the state's

20   consistent application of the procedural rule in the vast majority of cases); *Moran v.*

21   *McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996).

22       The state court's waiver ruling is a procedural ruling that was regularly and

23   consistently followed in Arizona at the time of the purported default.  *See Martinez-Villareal*

24   *v. Lewis*, 80 F.3d 1301, 1305-06 (9th Cir. 1996) (citing *Carriger v. Lewis*, 971 F.2d 329, 333

25   (9th Cir. 1992) (en banc); *see also Poland (Patrick)*, 169 F.3d at 585; *Ortiz*, 149 F.3d at 931-

26   32; *Poland (Michael)*, 117 F.3d at 1106.  Because the waiver rule was regularly and

27   consistently followed at the time of the default, it is adequate to bar federal review.  *Id.*

28   Furthermore, the state court's reliance upon Rule 32.2(a)(3) in its waiver ruling is

1   independent of federal law.  *See Smith*, 536 U.S. at 859-60.  Consequently, Claim 12 is
2   procedurally defaulted.

3          As cause to excuse the default, Petitioner argues that post-conviction counsel had a
4   conflict of interest that prevented him from asserting his own ineffectiveness and that the
5   state court failed to appoint competent counsel.  (Doc. 49 at 60-61; Doc. 269 at 9-10.)  The
6   Court has already addressed and rejected these arguments.  (*See* Doc. 132 at 20-25; Doc. 180
7   at 3-4.)  The Court has also considered and rejected the FMJ argument made for this claim.
8   (Doc. 49 at 61; Doc. 132 at 18.)  Claim 12 is procedurally barred from further review.

9          **Claim 14**

10         Petitioner alleges that the state court's application of the statutory aggravating
11  circumstance, A.R.S. § 13-703(F)(4), violated his constitutional right to due process,
12  sufficiency of the evidence, and his rights under the Eighth Amendment.  (Doc. 63 at 52-54.)
13  Respondents concede that the due process and sufficiency of the evidence aspects of this
14  claim were addressed by the Arizona Supreme Court, but contest that the Eighth Amendment
15  argument was exhausted. (*See* Doc. 48 at 54, citing *Apelt*, 176 Ariz. at 367, 861 P.2d at 652.)

16         Even though Respondents contest exhaustion of the Eighth Amendment argument,
17  review of the Eighth Amendment is undertaken when analyzing a state court's application
18  of a constitutionally narrowed aggravating circumstance.  *See Lewis v. Jeffers*, 497 U.S. 764,
19  780 (1990) (stating that federal habeas review determines "whether the state court's finding
20  [of an aggravating circumstance] was so arbitrary or capricious as to constitute an
21  independent due process or Eighth Amendment violation.").  Therefore, Claim 14 will be
22  reviewed on the merits regarding both the Eighth and the Fourteenth Amendments.

23         **Claim 15**

24         Petitioner argues that the state court's application of the statutory aggravating
25  circumstance, A.R.S. § 13-703(F)(6), violated his constitutional rights.  (Doc. 63 at 54-57.)
26  Respondents concede exhaustion of Petitioner's Fourteenth Amendment sufficiency of the
27  evidence argument, but contest exhaustion of his Eighth Amendment argument. (*See* Doc.
28  48 at 55.)

1    Respondents contest exhaustion of the Eighth Amendment, but as previously
2 discussed in Claim 14, review of the Eighth Amendment is undertaken when analyzing a
3 state court's application of a constitutionally narrowed aggravating circumstance.  *See*
4 *Jeffers*, 497 U.S. at 780.  Therefore, Claim 15 will be reviewed on the merits regarding both
5 the Eighth and the Fourteenth Amendments.

6    **Claim 16**

7    Petitioner argues that his death sentence was inappropriate because he was denied the
8 procedural safeguard of a proportionality review of his sentence.   (Doc. 63 at 57.)
9 Regardless of exhaustion, the Court will address this claim because it is plainly meritless.
10 *See* 28 U.S.C. § 2254(b)(2); *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

11    Petitioner's habeas petition is subject to the AEDPA, which established a
12 "substantially higher threshold for habeas relief," *Schriro v. Landrigan*, 550 U.S. 465, 473-74
13 (2007), with the "acknowledged purpose of 'reducing delays in the execution of state and
14 federal criminal sentences.'"  *Id.* at 475 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206
15 (2003)).  The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . .
16 demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*,
17 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy,* 521 U.S. 320, 333 n.7
18 (1997)).

19    Under the AEDPA, a petitioner is not entitled to habeas relief on any claim
20 "adjudicated on the merits" by the state court unless that adjudication:

21
22    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

23
24    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

25 28 U.S.C. § 2254(d).

26    With regard to Claim 16, the U.S. Supreme Court has held that there is no federal
27 constitutional right to proportionality review of a death sentence, *McCleskey v. Kemp*, 481
28 U.S. 279, 306 (1987) (citing *Pulley v. Harris*, 465 U.S. 37, 43-44 (1984)), and the Arizona

1   Supreme Court discontinued the practice prior to Petitioner's direct appeal.  *See State v.*
2   *Salazar*, 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992).  The Ninth Circuit has explained that
3   the interest implicated by proportionality review – the "substantive right to be free from a
4   disproportionate sentence"– is protected by the application of "adequately narrowed
5   aggravating circumstance[s]." *See Ceja v. Stewart*, 97 F.3d 1246, 1251 (9th Cir. 1996).
6   Claim 16 is denied.

7       **Claim 17**

8       Petitioner argues that the state courts failed to constitutionally consider the mitigation
9   evidence he presented at sentencing.  (Doc. 63 at 60.)  Respondents concede that the Eighth
10  and Fourteenth Amendment aspects are exhausted, but contest fair presentation of the Sixth
11  Amendment argument.  (Doc. 48 at 55.)  Petitioner did not present a Sixth Amendment
12  argument on direct appeal.  (*See* Opening Br. at 50-52.)  The Court has already considered
13  and rejected Petitioner's additional arguments for exhaustion.  *See supra* Claim 1-C.

14      If Petitioner were to return to state court now and attempt to argue that the state courts
15  violated the Sixth Amendment, the claim would be found waived and untimely under
16  Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4(a) because it does not fall within
17  an exception to preclusion.  *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).  Therefore,
18  Petitioner's Sixth Amendment argument is "technically" exhausted but procedurally
19  defaulted because he no longer has an available state remedy.  *See Coleman*, 501 U.S. at 732,
20  735 n.1; *Smith*, 510 F.3d at 1138.

21      As cause to excuse the default, Petitioner argues that direct appeal counsel
22  ineffectively failed to present the Sixth Amendment argument.  Before a claim of ineffective
23  assistance of counsel may be used as cause to excuse a procedural default, it must first be
24  exhausted in state court as an independent claim. *See Edwards*, 529 U.S. at 451-53; *Tacho*,
25  862 F.2d at 1381.  Petitioner did not raise in state court an IAC claim based on appellate
26  counsel's failure to present the Sixth Amendment aspect of Claim 17.  (*See* ROA-PCR2 at
27  49-62, 64.)  Therefore, it is not exhausted and cannot establish cause.  Because Petitioner
28  failed to establish cause, there is no need to address prejudice.  *See Boyd*, 147 F.3d at 1127.

1    The Court has already considered and rejected the FMJ argument made for this claim. (Doc.
2    49 at 76; Doc. 132 at 18.) The Eighth and Fourteenth Amendment aspects of Claim 17 will
3    be reviewed on the merits; the Sixth Amendment aspect is procedurally barred.

4         **Claim 18**

5         Petitioner contends that the Arizona Supreme Court's mandated balancing test
6    unconstitutionally requires that mitigation evidence outweigh proven aggravating
7    circumstance(s) in order to be granted leniency. (Doc. 63 at 63-64.) Respondents contend
8    that Petitioner did not exhaust this claim. (Doc. 48 at 56.) Regardless of exhaustion, the
9    Court will address this claim because it is plainly meritless. *See* 28 U.S.C. § 2254(b)(2);
10   *Rhines*, 544 U.S. at 277.

11        The Supreme Court has rejected the argument that Arizona's death penalty statute is
12   impermissibly mandatory and establishes a presumption of death because it provides that the
13   death penalty "shall" be imposed if one or more aggravating factors are found and mitigating
14   circumstances are insufficient to call for leniency.[7] *See Walton v. Arizona*, 497 U.S. 639,
15   651-52 (1990) (citing *Blystone v. Pennsylvania,* 494 U.S. 299 (1990), and *Boyde v.*
16   *California,* 494 U.S. 370 (1990)), *overruled on other grounds by Ring v. Arizona,* 536 U.S.
17   584 (2002); *see also Kansas v. Marsh*, 548 U.S. 163, 172-73 (2006) (relying on *Walton* to
18   uphold Kansas's death penalty statute, which directs imposition of the death penalty when
19   the state has proved that mitigating factors do not outweigh aggravators); *Smith v. Stewart*,
20   140 F.3d 1263, 1272 (9th Cir. 1998) (summarily rejecting challenges to the mandatory nature
21   of Arizona's death penalty statute). Thus, the Arizona Supreme Court's mandated balancing
22   test for the weighing of aggravating and mitigating circumstances before imposition of the
23   death penalty is not unconstitutional. Claim 18 is denied.

24

25   _____

26        [7]      The applicable death penalty provision, A.R.S. § 13-703(E) (1988), provided,
     in pertinent part: "the court shall take into account the aggravating and mitigating
27   circumstances . . . and shall impose a sentence of death if the court finds one or more of the
     aggravating circumstances . . . and that there are no mitigating circumstances sufficiently
28   substantial to call for leniency."

1   **Claim 19**

2       Petitioner alleges that various aspects of Arizona's death penalty statute violate his

3   constitutional rights.  (Doc. 63 at 64-69.)  Petitioner exhausted the following claims in the

4   state courts: that the statute does not serve societal interests; that it unconstitutionally

5   required Petitioner to bear the evidentiary burden for mitigation; that it does not narrowly

6   define the class of death-eligible defendants; that it establishes a presumption in favor of

7   death; that it fails to provide the trial court with sufficient sentencing discretion; that it fails

8   to require that the sentencer find that the aggravating circumstances outweigh mitigation

9   evidence beyond a reasonable doubt; and that it allows prosecutors unbridled discretion to

10  determine whether to initiate death penalty proceedings.  (Opening Br. at 28-40; ROA-PCR2

11  at 76-77.)

12      Although Petitioner also presented the claim that Arizona disproportionately imposed

13  the death penalty against men, the young, and the poor, the state court concluded this claim

14  was waived pursuant to Arizona Rule of Criminal Procedure 32.2(a)(3) because Petitioner

15  did not present it at a prior proceeding.  (*See* ROA-PCR2 at 390.)  An independent and

16  adequate state procedural rule, if invoked by the state court, bars federal court review of the

17  underlying claim.  *Coleman*, 501 U.S. at 750.  The court's waiver ruling is a state procedural

18  ruling that is regularly and consistently followed in Arizona; therefore, it is adequate to bar

19  federal review.  *See, e.g., Poland (Michael)*, 117 F.3d at 1106.  Furthermore, the state court's

20  reliance upon Rule 32.2(a)(3) is independent of federal law.  *See Smith*, 536 U.S. at 859-60.

21  Petitioner procedurally defaulted this claim in state court.

22      Petitioner failed to present the remainder of his claims, either on direct appeal or post-

23  conviction proceedings, including whether the trial court properly evaluated and applied his

24  mitigation evidence (Doc. 63, ¶¶ 353, 354); how a reasonable sentencer would have

25  evaluated the facts of his crime (*id.*, ¶ 360); lack of ability to voir dire the trial judge at

26  sentencing for possible judicial bias (*id.*, ¶ 363); and that the statute should require the

27  sentencer to find that there are not sufficient mitigating circumstances to warrant leniency

28  beyond a reasonable doubt (*id.*, ¶ 367).  If Petitioner were to return to state court now and

attempt to assert these claims, they would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) because they do not fall within an exception to preclusion. *See* Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, these claims are "technically" exhausted but procedurally defaulted because Petitioner no longer has an available state remedy. *See Coleman*, 501 U.S. at 732, 735 n.1; *Smith*, 510 F.3d at 1138.

As cause to excuse all procedurally defaulted claims, Petitioner argues that direct appeal counsel ineffectively failed to present these death penalty claims. Before a claim of ineffective assistance of counsel may be used as cause to excuse a procedural default, it must first be exhausted in state court as an independent claim. *See Edwards*, 529 U.S. at 451-53; *Tacho*, 862 F.2d at 1381. Petitioner did not exhaust an ineffectiveness claim regarding these death penalty arguments in state court. Therefore, Petitioner failed to establish cause. Because Petitioner failed to establish cause, there is no need to address prejudice. *See Boyd*, 147 F.3d at 1127. The Court has already considered and rejected the FMJ arguments. (Doc. 49 at 89-91; Doc. 132 at 18.) These claims are procedurally barred.

The Court further concludes that none of Petitioner's exhausted death penalty claims entitles him to relief. Petitioner's argument that Arizona's death penalty statute does not serve societal interests relies on his argument that the death penalty constitutes cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 63 at 66-67.) Petitioner argues that life imprisonment and life without parole are effective punishments, serving societal interests, whereas the death penalty does not serve a compelling state interest. (*Id.*) Petitioner's arguments have been rejected. Clearly established federal law holds that the death penalty does not constitute cruel and unusual punishment under the Eighth Amendment. *See Gregg v Georgia*, 428 U.S. 153, 169 (1976); *see also Roper v. Simmons*, 543 U.S. 551, 568-69 (2005) (noting that the death penalty is constitutional as applied to a narrow category of crimes and offenders).

Next, regarding his argument that the statute unconstitutionally requires him to bear the evidentiary burden for establishing mitigation (Doc. 63 at 67), in *Walton,* 497 U.S. at 651, the Supreme Court rejected the argument that "Arizona's allocation of the burdens of proof

1   in a capital sentencing proceeding violates the Constitution." *See also Delo v. Lashley*, 507

2   U.S. 272, 275-76 (1993) (referring to *Walton* and stating that the Court had "made clear that

3   a State may require the defendant 'to bear the risk of nonpersuasion as to the existence of

4   mitigating circumstances'").

5        Regarding his claim that the statute does not narrowly define the class of death-

6   eligible defendants (Doc. 63 at 68), Arizona's statute allows only certain, statutorily defined,

7   aggravating circumstances to be considered in determining eligibility for the death penalty.

8   In *Blystone*, the Supreme Court reiterated that "[t]he presence of aggravating circumstances

9   serves the purpose of limiting the class of death-eligible defendants, and the Eighth

10  Amendment does not require that these aggravating circumstances be further refined or

11  weighed by [the sentencer]." 494 U.S. at 306-07.  Rulings of both the Ninth Circuit and the

12  United States Supreme Court have upheld Arizona's death penalty statute against allegations

13  that particular aggravating factors do not adequately narrow the sentencer's discretion. *See*

14  *Jeffers*, 497 U.S. at 774-77; *Walton*, 497 U.S. at 649-56; *Woratzeck v. Stewart*, 97 F.3d 329,

15  335 (9th Cir.1996).

16       Regarding the claim that the statute impermissibly sets forth a mandatory presumption

17  of death (Doc. 63 at 67), the Court discussed this allegation in Claim 18 concluding that the

18  Supreme Court has rejected the argument that Arizona's death penalty statute is

19  impermissibly mandatory or establishes an unconstitutional presumption of death. *See supra*

20  Claim 18.

21       Next, Petitioner claims that the statute unconstitutionally fails to provide the sentencer

22  with sufficient sentencing discretion. (Doc. 63 at 68.)  Specifically, he argues that when the

23  statutory criteria are met, the sentencer must impose a death sentence even if they believe

24  that death is not the appropriate penalty.  (*Id.*)  First, the Court historically notes that in

25  *Furman v. Georgia*, 408 U.S. 238 (1972) (per curiam), death penalty statutes which

26  permitted sentencing juries absolute discretion in making the capital-sentencing

27  determination were the statutes found to violate the Eighth and Fourteenth Amendments due

28  to arbitrary and capricious imposition of death penalty.  As a result of *Furman*, many states,

1   including Arizona, enacted new capital statutes.  *See e.g., State v. Ring*, 204 Ariz. 534, 544-

2   45, 65 P.3d 915, 925-26 (2003) (discussing the history of capital punishment in Arizona).

3   "*Furman v. Georgia*, 408 U.S. 238 (1972) (per curiam), and *Gregg v. Georgia*, 428 U.S. 153

4   (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.), establish[ed] that a state capital

5   sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2)

6   permit a jury to render a reasoned, individualized sentencing determination based on a

7   death-eligible defendant's record, personal characteristics, and the circumstances of his

8   crime." *Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006) (citing *Gregg*, 428 U.S. at 189).

9       Following *Gregg*, the Supreme Court addressed an argument similar to Petitioner's

10   argument in *Boyde v. California*.  In *Boyde*, the petitioner argued that a death penalty statute

11   which required the sentencer to impose the death penalty when it concluded that the

12   aggravating circumstances outweighed established mitigation was unconstitutional.  494 U.S.

13   at 376-77.  The petitioner asserted that the sentencer must have sentencing discretion to

14   decline to impose the death penalty even when aggravation outweighs mitigation. *Id.* at 377.

15   The Supreme Court rejected the petitioner's arguments, holding there is no constitutional

16   requirement that the sentencer have unfettered sentencing discretion.  *Id.* at 377.  Thus, the

17   holding in *Boyde* controls; the Supreme Court has rejected Petitioner's similar sentencing

18   discretion argument.

19       Next, Petitioner argues that the Constitution requires the sentencer in a death penalty

20   proceeding to find that the aggravating circumstances outweigh mitigation beyond a

21   reasonable doubt.  (Doc. 63 at 69.)  The Court disagrees.  The State does have the burden of

22   proving the existence of aggravating circumstances beyond a reasonable doubt.  *See State v.*

23   *Jordan*, 126 Ariz. 283, 286, 614 P.2d 825, 828 (1980).  However, the Constitution does not

24   require that a death penalty statute set forth specific standards for a capital sentencer to

25   follow in their consideration of aggravating and mitigating circumstances.  *See Zant v.*

26   *Stephens*, 462 U.S. 862, 875 (1983); *see also Tuilaepa v. California*, 512 U.S. 967, 979-80

27   (1994) (stating that the Constitution does not require that a capital sentencer be instructed in

28   how to weigh any particular fact in the capital sentencing decision); *Franklin v. Lynaugh*,

1   487 U.S. 164, 179 (1988) (rejecting the notion that a specific method for balancing

2   aggravating and mitigating factors is constitutionally required).  Nor does the Constitution

3   require that a specific weight be given to any particular mitigating factor.  *See Harris v.*

4   *Alabama*, 513 U.S. 504, 512 (1995).  Thus, the Constitution does not require the capital

5   sentencer in Arizona to find that the aggravating circumstances outweigh mitigation beyond

6   a reasonable doubt.

7        Regarding unbridled prosecutor discretion in decisions to initiate death penalty

8   proceedings (Doc. 63 at 68), in *Smith*, the Ninth Circuit rejected the argument that Arizona's

9   death penalty statute is constitutionally infirm because "the prosecutor can decide whether

10   to seek the death penalty." 140 F.3d at 1272; *see also Gregg,* 428 U.S. at 199 (pre-sentencing

11   decisions by actors in the criminal justice system that may remove an accused from

12   consideration for the death penalty are not unconstitutional); *Campbell v. Kincheloe*, 829

13   F.2d 1453, 1465 (9th Cir. 1987) (observing that a challenge to a state capital punishment

14   statute on the ground that it "vests unbridled discretion in the prosecutor to decide when to

15   seek the death penalty . . . has been explicitly rejected by the Supreme Court") (citations

16   omitted).  Based on the foregoing, Petitioner is not entitled to relief on Claim 19.

17   **Claim 21**

18        Petitioner alleges that execution after an extended period of incarceration on death

19   row fails to serve any legitimate penological purpose and violates his Eighth Amendment

20   right to be free from cruel and unusual punishment.  (Doc. 63 at 74.)  Regardless of

21   exhaustion, the Court will deny Claim 21 as plainly meritless.  *See* 28 U.S.C. § 2254(b)(2);

22   *Rhines*, 544 U.S. at 277.

23        The Supreme Court has not held that lengthy incarceration prior to execution

24   constitutes cruel and unusual punishment.  *See Lackey v. Texas*, 514 U.S. 1045 (1995)

25   (mem.) (Stevens, J. & Breyer, J., discussing denial of *certiorari* and noting the claim has not

26   been addressed).  Circuit courts, including the Ninth Circuit, have held that prolonged

27   incarceration under a sentence of death does not offend the Eighth Amendment.  *See*

28   *McKenzie v. Day*, 57 F.3d 1493, 1493-94 (9th Cir. 1995) (en banc); *White v. Johnson*, 79

1  F.3d 432, 438 (5th Cir. 1996) (delay of 17 years); *Stafford v. Ward*, 59 F.3d 1025, 1028 (10th

2  Cir. 1995) (delay of 15 years).  Accordingly, Petitioner cannot establish a right to federal

3  habeas relief.  *See Allen v. Ornoski*, 435 F.3d 946, 958-60 (9th Cir. 2006).

4    **Claim 22**

5    Petitioner alleges, citing *Ford v. Wainwright*, 477 U.S. 399 (1986), that he is

6  incompetent to be executed. (Doc. 63 at 76-77.)  This claim is not yet ripe for federal review.

7  Under *Martinez-Villareal v. Stewart*, 118 F.3d 628, 634 (9th Cir.1997), *aff'd*, 523 U.S. 637

8  (1998), a claim of incompetency for execution had to "be raised in a first habeas petition,

9  whereupon it also must be dismissed as premature due to the automatic stay that issues when

10  a first petition is filed." The Supreme Court revisited *Martinez-Villareal* and concluded in

11  *Panetti v. Quarterman*, 551 U.S. 930 (2007), that it is unnecessary to raise unripe *Ford*

12  claims in the initial habeas petition in order to preserve any possible unripe incompetency

13  claim.  *Id.* at 946-47. Thus, if this claim becomes ripe for review, it may be presented to the

14  district court; it will not be treated as a second or successive petition.  *See id.*  Claim 22 is

15  dismissed without prejudice as premature.

16    **Claim 23**

17    Petitioner contends that Arizona's lethal injection procedures constitute cruel and

18  unusual punishment in violation of the Eighth and Fourteenth Amendments.  (Doc. 63 at 77-

19  93.)  Regardless of exhaustion, the Court will deny Claim 23 as plainly meritless.  *See* 28

20  U.S.C. § 2254(b)(2); *Rhines*, 544 U.S. at 277.

21    The United States Supreme Court has never held that lethal injection constitutes cruel

22  and unusual punishment, *see Baze v. Rees*, 553 U.S. 35 (2008), and the Ninth Circuit has

23  concluded that death by lethal injection in Arizona does not violate the Constitution. *See*

24  *LaGrand v. Stewart*, 133 F.3d 1253, 1265 (9th Cir.1998); *Poland (Michael)*, 117 F.3d at

25  1104-05; *see also Dickens v. Brewer*, No. 09-16539, 2011 WL 420682 (9th Cir. Feb. 9, 2011)

26  (holding that Arizona's lethal injection protocol does not violate the Eighth Amendment).

27  Therefore, Claim 23 is without merit.

28    Moreover, prior to execution, Petitioner may present this claim in a separate civil

1    rights action under 42 U.S.C. § 1983. *See United States v. Mitchell*, 502 F.3d 931, 983-84

2    (9th Cir. 2008) (citing *Hill v. McDonough*, 547 U.S. 573, 579-80 (2006) (recognizing that

3    prior to an execution a challenge to the State's execution method may be brought in a § 1983

4    action)).  On the basis of the foregoing, Petitioner is not entitled to relief for Claim 23.

5         **Claim 24**

6         Petitioner alleges that his constitutional rights will be violated because he will not

7    receive a fair clemency proceeding. (Doc. 63 at 93.)  In particular, he alleges the proceeding

8    will not be fair and impartial based on the Arizona Board of Executive Clemency's selection

9    process, composition, training, and procedures, and because the Attorney General will act

10   both as the Clemency Board's legal advisor and as an advocate against Petitioner. (*Id.* at 93-

11   94)

12        Petitioner acknowledges that because he has not sought clemency this claim is

13   premature and not ripe for adjudication. More significantly, however, this claim is not

14   cognizable on federal habeas review. Habeas relief can only be granted on a claim that a

15   prisoner "is in custody in violation of the Constitution or laws or treaties of the United

16   States." 28 U.S.C. § 2254(a). Petitioner's challenge to state clemency procedures does not

17   constitute an attack on his detention (i.e., his conviction or sentence) and thus is not a proper

18   ground for habeas relief. *See Franzen v. Brinkman*, 877 F.2d 26 (9th Cir.1989); *see also*

19   *Woratzeck v. Stewart*, 118 F.3d 648, 653 (9th Cir.1997) (per curiam) (clemency claims are

20   not cognizable under federal habeas law). Therefore, Claim 24 is dismissed as not

21   cognizable.

22        **Claim 25**

23        Petitioner alleges that Arizona's statutory death penalty scheme is unconstitutional

24   because it allowed a judge, not a jury, to find the aggravating circumstances that rendered

25   him death-eligible, and because it failed to require the state to provide notice of aggravating

26   circumstances in his indictment. (Doc. 63 at 96-98.)  Petitioner previously withdrew this

27   claim, but has included it as part of his proposed Third Amended Petition. (*See* Doc. 248, Att.

28   1 at 130.)  Regardless of its procedural status, the Court will deny Claim 25 as without merit.

1   *See* 28 U.S.C. § 2254(b)(2); *Rhines*, 544 U.S. at 277.

2       Claim 25 is premised primarily upon *Ring v. Arizona*, 536 U.S. 584, 609 (2002),

3   which found that Arizona's aggravating factors are an element of the offense of capital

4   murder and therefore must be found by a jury. However, subsequently, in *Schriro v.*

5   *Summerlin*, 542 U.S. 348 (2004), the Court further held that *Ring* does not apply retroactively

6   to cases already final on direct review. Because direct review of Petitioner's case was already

7   final prior to *Ring*, he is not entitled to federal habeas relief premised on that ruling.

8       With regard to his indictment claim, the Supreme Court has held that facts constituting

9   the elements of an offense rather than just a sentencing enhancement must be charged in a

10  *federal* indictment. *See Jones v. United States*, 526 U.S. 227, 252 (1999). However, the

11  Fifth Amendment Due Process Clause does not incorporate the same requirements upon state

12  criminal prosecutions by virtue of the Fourteenth Amendment. *See Hurtado v. California*,

13  110 U.S. 516, 538 (1884); *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972). Therefore,

14  states are not required by the Constitution to empanel grand juries for purposes of indictment.

15  *Id.* Based upon these principles, Petitioner's argument was rejected by the Arizona Supreme

16  Court, which held that the federal constitution does not require that aggravating factors be

17  alleged in an indictment and supported by probable cause. *See McKaney v. Foreman*, 209

18  Ariz. 268, 270, 100 P.3d 18, 20 (2004). This Court agrees. Claim 25 is without merit.

19      Based on the foregoing,

20      **IT IS HEREBY ORDERED** that Petitioner's motion to amend is **GRANTED**.

21  (Doc. 248.) Pursuant to LRCiv 15.1, within fourteen (14) days of the filing of this Order,

22  Petitioner shall file his Third Amended Petition.

23      **IT IS FURTHER ORDERED** that the following claims are **DISMISSED WITH**

24  **PREJUDICE**: Claims 1-C, 1-D, 11 (Sixth Amendment), 12, 17 (Sixth Amendment), and

25  19 (in part) are procedurally barred; Claims 16, 18, 19 (in part), 21, 23 and 25 are without

26  merit; and Claim 24 is not cognizable.

27      **IT IS FURTHER ORDERED** that Claim 22 is premature and is **DISMISSED**

28  **WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that no later than thirty (30) days following entry of this Order, Petitioner shall file a memorandum ("Merits Brief RE: Sentencing Claims") regarding the merits of Claims 11 (Eighth and Fourteenth Amendments), 14 (Eighth and Fourteenth Amendments), 15 (Eighth and Fourteenth Amendments), 17 (Eighth and Fourteenth Amendments), and 26-27.   The Merits Brief RE: Sentencing Claims shall specifically identify and apply appropriate AEDPA standards of review as to *each claim for relief*, not simply restate facts and argument contained in the Third Amended Petition.  In addition to briefing the merits of each claim, Petitioner shall also identify in the Merits Brief RE: Sentencing Claims any request for further evidentiary development, specifically:

    A.    identify the enumerated claim(s) Petitioner contends need further factual development;

    B.    provide an offer of proof (i.e., declarations, documentary evidence, summaries of proposed testimony) setting forth the facts to be developed and the source of the proffered evidence; and

    C.    apply the applicable standards for obtaining evidentiary development, including an explanation of why the claim was not developed in state court and why the failure to develop the claim in state court was not the result of lack of diligence, in accordance with 28 U.S.C. § 2254(e)(2) and *Williams v. Taylor*, 529 U.S. 420 (2000).

**IT IS FURTHER ORDERED** that, no later than thirty (30) days following the filing of the Merits Brief RE: Sentencing Claims, Respondents shall file a Response ("Merits Response RE: Sentencing Claims").

**IT IS FURTHER ORDERED** that no later than fifteen (15) days following the filing of Respondents' Merits Response RE: Sentencing Claims, Petitioner may file a Merits Reply RE: Sentencing Claims.

**IT IS FURTHER ORDERED** that if, pursuant to LRCiv 7.2(g), Petitioner or Respondents file a Motion for Reconsideration of this Order, such motion shall be filed within fifteen (15) days of the filing of this Order.  The filing and disposition of such motion shall not toll the time for the filing of the Merits Brief, Response or Reply as scheduled in this Order.

DATED this 12th day of April, 2011.


Roslyn O. Silver
Chief United States District Judge