**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Apelt,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>　　　　　　Respondents. | No. CV-98-00882-PHX-ROS<br><br>DEATH PENALTY CASE<br><br>ORDER |

In an order dated September 1, 2015, the Court denied all but one of Apelt's remaining habeas claims. (Doc. 359.) With respect to Claim 12, alleging ineffective assistance of counsel at sentencing, the Court found the state court's rejection of the claim was unreasonable under 28 U.S.C. § 2254(d)(1). (*Id.* at 55.) The Court directed the parties to file supplemental briefs addressing whether an evidentiary hearing was necessary to determine if Apelt is entitled to habeas relief on the claim. (*Id.* at 56.) On September 15, Respondents filed a motion asking the Court to reconsider its analysis of Claim 12. (Doc. 361.) On September 18, the parties filed their supplemental briefs, each stating that an evidentiary hearing was unnecessary. (Docs. 363, 364.)

As set forth below, the Court will deny the motion for reconsideration and grant relief on Claim 12.

1.　　Motion for Reconsideration is Denied

Respondents move for reconsideration pursuant to Rule 7.2(g) of the Local Rules of Civil Procedure. (Doc. 361 at 1.) Motions for reconsideration are disfavored and should be denied "absent a showing of manifest error or of new facts or legal authority."

1 L.R. Civ. P. 7.2(g). A motion for reconsideration may not repeat arguments made in support of or in opposition to the motion that resulted in the Order for which the party seeks reconsideration. *Id.*

The state PCR court denied Claim 12 on procedural grounds and, alternatively, on the merits. This Court reviewed the state court's ruling under 28 U.S.C. § 2254(d) and found the state court's denial of the claim was contrary to and an unreasonable application of *Strickland v. Washington*, 466 U.S. 688 (1984). (Doc. 359 at 20–27.)

Respondents contend the Court committed manifest error by applying *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), to excuse the procedural default of Claim 12. (Doc. 361 at 4.) As Apelt notes, however, the Court did not apply *Martinez* to excuse the default but instead reviewed the state court's alternative merits ruling. (Doc. 359 at 17.) The Court noted *Martinez*, but only in the context of reassessing its earlier determination that Claim 12 was procedurally defaulted and barred from federal review. (*Id.*) The Court concluded, citing *Clabourne v. Ryan*, 745 F.3d 362, 382 (9th Cir. 2014), that the state court's alternative merits ruling was subject to review under § 2254(d).[1]

Respondents further contend the Court committed manifest error in its application

---

[1] Respondents believe the Court has overlooked one of their arguments. Respondents believe Claim 12 was procedurally defaulted and, given the state court's alternative merits ruling, the procedural default must be enforced. Under this argument, *Martinez* is not available to excuse the procedural default of any claim where an alternative merits ruling is also issued. In *Martinez* itself, the Arizona Attorney General's Office argued on remand that the presence of an alternative merits ruling meant that alternative ruling had to be reviewed under a deferential standard. CV-08-0785-JAT, Doc. 31 at 40-44. That is, the Arizona Attorney General's Office claimed the alternative merits ruling *was* subject to review under the deferential standard of review required by AEDPA. While the Arizona Attorney General's Office is not bound to take the same position in every case regarding the meaning of *Martinez*, it has not offered any explanation for its evolving interpretation of *Martinez* in effectively identical situations. More importantly, the Ninth Circuit appears to have addressed the exact situation presented here. In a post-*Martinez* opinion—also litigated by the Arizona Attorney General's Office—the Ninth Circuit noted the Arizona state court had held a claim was procedurally defaulted but had also addressed the claim on its merits. *Clabourne v. Ryan*, 745 F.3d 362, 383 (9th Cir. 2014). The Ninth Circuit held "AEDPA deference applie[d] to th[e] alternative holding on the merits" and concluded the state court's alternative merits ruling "was not contrary to, nor an unreasonable application of federal law." *Id.* Accordingly, rather than overlooking one of Respondents' arguments, the Court considered it and rejected it as barred by clear precedent. Even now, Respondents have not clearly explained how this Court could have committed error by following the sequence explicitly set forth by the Ninth Circuit in *Clabourne*.

1   of § 2254(d) and *Strickland*. Specifically, Respondents argue the Court erred in its
2   assessment of *Strickland*'s prejudice prong by failing to reweigh the totality of the
3   mitigating evidence against the aggravating factors. Here, Respondents repeat arguments
4   made previously (Doc. 335 at 42–46), which is cause for denial under L.R. Civ. P. 7.2(g).
5   In any event, the arguments are without merit.

6   The Court found that Apelt was prejudiced by sentencing counsel Villareal's
7   deficient performance because "[t]he magnitude of the difference between the mitigating
8   evidence that was presented at sentencing and the evidence that could have been
9   presented through a competent investigation is sufficient to undermine confidence in the
10  outcome." (Doc. 359 at 26–27.) In making that determination, the Court necessarily took
11  into account the aggravating factors as well as the totality of the mitigating evidence.
12  There was no error.

13  Respondents' motion to reconsider will be denied.

14  2.      <u>Apelt is Entitled to Habeas Relief</u>

15  In its prior order, the Court noted it was unclear whether an evidentiary hearing
16  was required or appropriate. (Doc. 359 at 28). In making that observation, the Court also
17  pointed out that an evidentiary hearing would give Respondents the opportunity to
18  "challenge the veracity of Apelt's evidence." (Doc. 359 at 28). Respondents have
19  declined an evidentiary hearing because "the existing record, including the extensive
20  record from the state-court *Atkins v. Virginia* . . . hearing, is sufficient to resolve Claim
21  12."[2] (Doc. 363 at 2). Respondents also state they "have interviewed Villarreal" and he
22  "would offer testimony generally consistent with the multiple affidavits he has presented
23  in this case and the facts that are readily apparent from the record." (Doc. 363 at 2).
24  Given that Apelt agrees no evidentiary hearing is needed, one will not be held. (Doc. 364
25  at 2). The Court notes, however, an evidentiary hearing would have been especially

---

[2] In 2002 the Court stayed the habeas proceedings to allow Apelt to pursue a claim under *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (holding the Eighth Amendment prohibits the execution of intellectually disabled prisoners). The state court held an evidentiary hearing in 2007 and determined Apelt did not meet his burden of showing intellectual disability.

- 3 -

useful to assess whether Villareal's performance was, in fact, deficient. But Respondents do not argue Villareal performed competently. Accordingly, the Court will focus only on the issue of prejudice.[3]

The Court noted that Villareal's case in mitigation omitted evidence directly contradicting the argument that Apelt's childhood was "normal" as presented to the trial court at sentencing. (Doc. 359 at 9–12.) This evidence, presented to the state court by PCR counsel, was of extreme poverty, physical abuse, developmental delays, and mental health problems. (*Id.*) PCR counsel also presented evidence that as a child Apelt had been sexually assaulted twice by older men, once at knife point. (*Id.* at 11.)

The record developed since the PCR court's denial of Claim 12 strengthens Apelt's allegation of prejudice. As argued by Apelt, the record details "a uniquely brutal and sadistic upbringing" and history of developmental delays. (Doc. 326 at 43.)

Through affidavits of friends and family, and in testimony from the *Atkins* hearing, Apelt has offered the evidence that follows in support of Claim 12. He was conceived when his father, Rudi Sr., raped his mother, Lieselotte Schmidt. (Doc. 285, Ex's. 1, 9.) Lieselotte experienced a difficult labor, which resulted in Petitioner suffering anoxia, or oxygen deprivation. (*Id.*, Ex's 9, 15.) Lieselotte had an IQ of 66 and was likely intellectually disabled. (RT 5/7/07 at 34–35.)

Apelt's family was poor. They lived in an unheated three-room apartment with Rudi Sr., Lieselotte, seven children, a grandmother, an aunt, and two cousins. (Doc. 326, Ex. 9.)

Rudi Sr. beat Apelt on the head with sticks, a coal oven iron, and his fists. (*Id.*, Ex's 8–10; RT 5/9/07 at 120.) Apelt and his brother Rudi suffered the worst beatings

---

[3] The Court previously discussed the deficiencies of Villareal's performance at sentencing. Villareal did almost nothing to investigate and present evidence of Apelt's social background and mental health history. He did not collect relevant records, interview potential mitigation witnesses, contact a mental health professional, or present a single witness at the sentencing hearing. *See, e.g.*, *Robinson v. Schriro*, 595 F.3d 1086, 1108–09 (9th Cir. 2010). His performance fell well below "prevailing professional norms." *Strickland*, 466 U.S. at 688.

- 4 -

1  because they were the youngest. (*Id.*, Ex. 11.) The beatings resulted in multiple
2  concussions. (*Id.*, Ex. 4.) On another occasion, when Rudi Sr. discovered that Apelt had
3  gotten a tattoo on his arm, he burned the tattoo off with a red-hot iron. (*Id*., Ex's 1, 4.)
4        Rudi Sr. was cruel to his children. He killed the family dog simply to show his
5  children what he was capable of doing. (*Id.* Ex. 8.) He drugged the children to control
6  their behavior, sedating them so that he did not have to provide supervision. (*Id.*, Ex's 10,
7  11, 23.)
8        Rudi Sr. also sexually abused his children, including raping Apelt's sister. (*Id.*, Ex.
9  11.) Rudi Sr. and other men wearing dark uniforms took Apelt and Rudi into the
10 basement, tied them up, and struck their genitals with canes. (*Id.*, Ex. 5.)
11        On several occasions during his childhood and adolescence, Apelt attempted
12 suicide and was hospitalized. (*Id.*, Ex's 4, 5, 14.) His mother and siblings also attempted
13 suicide. (*Id.*, Ex. 9.)
14        Apelt suffered extreme stress as a result of his father's abuse. He was unable to
15 control his bowels until the first or second grade. (*Id.*, Ex's. 9–11, 26.) When he soiled
16 himself, his father would rub his pants in his face. (*Id.*, Ex. 4.)
17        Dr. Moran, the State's expert at the *Atkins* hearing, conceded Apelt's father was
18 "sadistic" and "possibly psychotic." (RT 5/9/07 at 53.) He characterized Apelt's
19 childhood as "psychosocially deprived" and "astoundingly bad." (*Id.* at 58.)
20        Apelt's childhood development was delayed. (RT 5/11/07 at 80.) He brought his
21 pacifier to school when he was seven or eight and continued to use it until he was ten or
22 eleven. (*Id*., Ex's. 10, 26.) By age ten, he could barely speak and often confused letters.
23 (RT 5/9/07 at 117.) Before that, he communicated through hand signals and noises. (*Id*.)
24 Once he did learn to speak, he stuttered, spoke in short sentences, and used a limited
25 vocabulary. (*Id.* at 117–18; RT 5/11/07 at 51, 53, 55–57, 80; Doc. 285, Ex. 26.) During
26 his developmental years, Apelt had difficulty maintaining his hygiene and dressing
27 appropriately. (RT 5/9/07 at 126; Doc. 285, Ex. 11.)
28        Apelt attended a special education school for learning disabled and mentally

- 5 -

retarded children. (*Id.*; RT 5/11/07 at 11, 22.) When he reached the ninth grade, he left school. (*Id.* at 16.)

Apelt had a difficult time maintaining employment and worked in unskilled labor. (*Id.*, Ex. 138; RT 5/10/07 at 119–20.) Although in Germany even intellectually disabled people attended vocational school and completed an apprenticeship, Apelt never successfully finished the training "even for fairly simple professions." (RT 5/10 at 119–20.) Instead, he failed his apprenticeship and worked in part-time positions. (*Id.* at 120.)

In 1983, Apelt was discharged from compulsory service in the German armed forces for "mental inadequacy." (Doc. 285, Ex. 17.) The next year, at age 21, he was sent to a psychiatric institution after a suicide attempt. (*Id.*, Ex. 16.) He experienced nightmares, memory loss, and depression. (*Id.*, Ex. 14.) He also suffered severe stress, resulting in "shortness of breath, vertigo, and pain in the left arm." (*Id.*, Ex. 16 at 1, 3.) Such attacks caused Apelt to seek emergency treatment on numerous occasions. (*Id.*) In 1986, Apelt was hospitalized for five months. (*Id.*, Ex. 15.) Before that, he had been on disability for seven to eight months. (*Id.*)

None of this evidence was presented at sentencing. As a result, the court was given a picture of Apelt's background that bore "no relation" to the picture that could have been presented if sentencing counsel had performed competently. *Rompilla v. Beard*, 545 U.S. 374, 392–93 (2005). In circumstances like these, where such "classic" mitigation has been omitted, courts have consistently found ineffective assistance of counsel. *Hamilton v. Ayers*, 583 F.3d 1100, 1131 (9th Cir. 2009).

In *Hamilton*, the sentencing jury heard only that Hamilton had been placed temporarily in foster care due to unspecified problems at home, that he was kind to stray animals and people, and that he loved his children. *Id*. Counsel failed to present evidence of "the indisputably horrific treatment Hamilton and his siblings suffered at the hands of his mother, father, and various extended family members. It did not hear that Hamilton had been diagnosed with mental health problems as early as age twelve, and that he had ongoing depression and suicidal thoughts through trial." *Id.* In *Rompilla,* 545 U.S. at

390–93, the Supreme Court found prejudice where counsel failed to discover and present evidence that the defendant was raised in a slum, beaten by his parents, witnessed his father's frequent abuse of his mother, quit school at sixteen, had no indoor plumbing, and may have had schizophrenia or another mental disorder. In *Williams v. Taylor*, 529 U.S. 362, 369–70 (2000), the Court found prejudice where counsel failed to investigate and present evidence that the defendant had been abused and neglected during his childhood, was borderline mentally retarded, had suffered repeated head injuries, and might have mental impairments organic in origin. *See also Douglas v. Woodford*, 316 F.3d 1079, 1088 (9th Cir. 2003) (finding prejudice where counsel failed to discover and present evidence that defendant was abandoned as a child and raised by foster parents, including an abusive alcoholic foster father who frequently locked him in a closet; rarely had enough food; and was beaten and raped in jail at the age of fifteen); *Karis v. Calderon,* 283 F.3d 1117, 1139 (9th Cir. 2002) (finding prejudice where counsel failed to present evidence of the substantial abuse suffered by defendant whose father and stepfather "viciously beat" him and his mother on a regular basis).

Respondents contend the three aggravating factors outweigh the totality of the mitigating evidence. (Doc. 363 at 8–9.) They argue that the aggravating factors are "compelling,"[4] that the evidence of an abusive childhood would be entitled to "minimal" weight because it was unconnected to the crime, and that rebuttal evidence about Apelt's anti-social personality disorder would have been "devastating." (*Id.*)

"In establishing prejudice under *Strickland*, it is not necessary for the habeas petitioner to demonstrate that the newly presented mitigation evidence would necessarily overcome the aggravating circumstances." *Correll v. Ryan*, 539 F.3d 938, 951–52 (9th Cir. 2008) (citing *Williams*, 529 U.S. at 398); *see also Rompilla*, 545 U.S. at 393 (explaining "although we suppose it is possible that [the sentencer] could have heard it all

---

[4] The trial court at sentencing found that Apelt procured the murder with the promise of pecuniary gain, committed the murder with the expectation of pecuniary gain, and committed the murder in an especially cruel, heinous or depraved manner. *Apelt*, 176 Ariz. 349, 367, 861 P.2d 634, 652 (1993).

- 7 -

and still decided on the death penalty, that is not the test"). Instead, the court "evaluate[s] whether the difference between what was presented and what could have been presented is sufficient to 'undermine confidence in the outcome' of the proceeding." *Lambright v. Schriro*, 490 F.3d 1103, 1121 (9th Cir. 2007) (quoting *Strickland,* 466 U.S. at 694).

As the Ninth Circuit noted in *Lambright*, "both this court and the Supreme Court have consistently held that counsel's failure to present readily available evidence of childhood abuse, mental illness, and drug addiction is sufficient to undermine confidence in the result of a sentencing proceeding, and thereby to render counsel's performance prejudicial." *Id.* In Apelt's case, the omitted evidence of childhood deprivation, pervasive physical and sexual abuse, and delayed intellectual development is sufficient to undermine confidence in the outcome of the sentencing, notwithstanding the three aggravating factors. *See, e.g.*, *Ainsworth v. Woodford*, 268 F.3d 868, 878 (9th Cir. 2001) ("Defense counsel failed to investigate, develop and present the wealth of evidence available concerning Ainsworth's troubled background and his emotional stability and what led to the development of the person who committed the crime."); *Wharton v. Chappell*, 765 F.3d 953, 978 (9th Cir. 2014) (finding a reasonable probability of a different sentence if counsel has presented testimony of sexual abuse); *Correll*, 539 F.3d at 952 (finding prejudice where counsel failed to develop and present classic mitigation evidence of substance abuse and family dysfunction).

Respondents' arguments to the contrary are not persuasive. First, though three aggravating factors were found, under Arizona law the pecuniary gain and procuring factors are not both entitled to "full weight." *State v. Carlson*, 48 P.3d 1180, 1191 (2002). (Doc. 359 at 38–40 n.16.) In addition, "the Supreme Court has made clear that counsel's failure to present mitigating evidence can be prejudicial even when the defendant's actions are egregious." *Stankewitz v. Woodford*, 365 F.3d 706, 717–18 (9th Cir. 2004) (finding prejudice where defendant attacked a 70-year-old man, shot at a police officer, attacked a counselor, stabbed a fellow inmate, and attacked several officers at a police station). "Evidence of mental disabilities or a tragic childhood can affect a sentencing

determination even in the most savage case." *Lambright*, 241 F.3d at 1208; *see Earp v. Ornoski*, 431 F.3d 1158, 1180 (9th Cir. 2005) (finding prejudice where 18-month old victim died from multiple head blows or shaking, and had severe rectal and vaginal injuries consistent with sexual assault); *Mak v. Blodgett*, 970 F.2d 614, 620-22 (9th Cir. 1992) (finding prejudice despite the presence of exceedingly horrific circumstances of the crime in which the defendant slaughtered thirteen people in the course of one night to eliminate all witnesses to an armed robbery). Finally, the Ninth Circuit has recognized "prejudice is 'especially likely'" where the aggravating factors are based on the circumstances of the crime. *Earp*, 431 F.3d at 1180 (quoting *Lambright*, 241 F.3d at 1208). Here, the three aggravating factors are related to the facts of the murder.

Respondents discount the significance of the omitted mitigating evidence by arguing no connection exists between the poverty and abuse Apelt experienced as a child and the murder he committed at age 25. They also contend the mitigating value that Apelt suffers from mental impairment, including intellectual deficits, would be offset by rebuttal evidence diagnosing him with anti-social personality disorder. (Doc. 363 at 8.) These arguments are not persuasive.

While it is true the absence of a causal connection between the mitigating circumstance and the crime may be a factor in assessing the weight of the mitigation, *see State v. Hampton*, 213 Ariz. 167, 185, 140 P.3d 950, 968 (2006), it is established that "evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989), *abrogated by Atkins v. Virginia*, 536 U.S. 304 (2002) (quotation omitted). The evidence of Apelt's allegedly horrific childhood is "the kind of troubled history we have declared relevant to assessing a defendant's moral culpability." *Wiggins*, 539 U.S. at 535.

Respondents overstate their argument with the assertion that evidence of antisocial

personality disorder would have been "devastating." (Doc. 363 at 9). "[T]he Arizona Supreme Court has made it clear that an antisocial personality disorder (sociopathic disorder) is a mitigating factor" and "there can be no doubt that the trial court must consider that personality defect when it is present in a case." *Smith v. Stewart*, 140 F.3d 1263, 1270 (9th Cir. 1998).

In addition, whatever impact the diagnosis would have on the other mental health evidence, it would have no effect on the new mitigation evidence that Apelt allegedly was raised in an environment of extreme poverty and dysfunction and suffered horrific physical and sexual abuse. "Given the nature and extent of the abuse, there is a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing, and that a [sentencer] confronted with such mitigating evidence would have returned with a different sentence." *Wiggins*, 539 U.S. at 513; *see, e.g.*, *Wharton*, 765 F.3d at 977 ("Childhood sexual abuse can be powerful evidence in mitigation, particularly when it is not an isolated event."); *Karis*, 283 F.3d at 1140 (explaining there was "no risk in putting on evidence of the wrenching abuse of Karis and his mother" and omission of such "highly relevant information of an abusive childhood" was prejudicial).

3.  Conclusion

Villareal's representation at sentencing was inadequate and prejudiced Apelt. If Villareal had performed a competent mitigation investigation, there is a reasonable probability that Apelt would not have been sentenced to death. Villareal's deficient performance, which resulted in the near-total omission of classic mitigation evidence, undermines confidence in the sentencing decision. Apelt is entitled to relief on Claim 12.

Based on the foregoing,

**IT IS ORDERED** denying Respondents' motion for reconsideration (Doc. 361).

**IT IS FURTHER ORDERED** Apelt's Third Amended Petition for Writ of Habeas Corpus (Doc. 276) as to Claim 12 is **GRANTED** unless the State of Arizona initiates resentencing proceedings within 120 days of the entry of this judgment.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the Clerk of Court forward a courtesy copy of this Order to the Clerk of the Arizona Supreme Court, 1501 W. Washington, Phoenix AZ 85007-3329.

Dated this 1st day of December, 2015.

Honorable Roslyn O. Silver
Senior United States District Judge